**EUGENE B. JR., a Minor by His Parents, EUGENE AND KATHE B., Plaintiffs,**

v.

**The GREAT NECK UNION FREE SCHOOL DISTRICT, Defendant.**

**No. CV 83–3958.**

United States District Court,
E.D. New York.

May 28, 1986.

Lord, Day & Lord, New York City, for plaintiffs.

Ginsberg, Ehrlich & Reich, Mineola, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Eugene and Kathe B. bring this action on behalf of their minor child, Eugene B., Jr. ("Gene") pursuant to the Education of the Handicapped Act, as amended by the Education for All Handicapped Children Act of 1975 ("EAHCA" or "Act"), 20 U.S.C. §§ 1401–1461, the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–796, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, against defendant Great Neck Union Free School District ("District"). Plaintiffs seek to recover private school tuition payments for the 1981–82 and 1982–83 school years, and costs and attorneys fees incurred in connection with this lawsuit. Plaintiffs have moved for summary judgment under Fed.R.Civ.P. 56(a). Defendant opposes plaintiffs' motion, and cross-moves for summary judgment in its favor under Fed.R.Civ.P. 56(b), and for joinder of the New York State Commissioner of Education ("Commissioner") pursuant to Fed.R.Civ.P. 19(a). Plaintiffs by reply oppose joinder of the Commissioner.

### I.

Eugene B., Jr. was born on October 1, 1968 and entered public school in the Great Neck Union Free School District at kindergarten level. During Gene's year in kindergarten, it became clear that he was not progressing at the pace of most other children and that he had difficulty learning in an ordinary classroom setting. Accordingly, the District placed Gene in a special education program in which specially qualified instructors using specially developed materials taught small groups of children apart from the mainstream of students.

I.Q. tests administered to Gene by the District indicated low normal to average intelligence with particular deficits in verbal performance. Gene was also examined by school psychologists, who diagnosed him as emotionally disturbed and tended to attribute his learning difficulties to his emotional problems. The I.Q. tests and psychological interviews were the full extent of the District's effort to evaluate and diagnose Gene's learning difficulties. At various times from the early 1970's onward, plaintiffs privately obtained both individual and family counseling for Gene.

Gene attended the Great Neck North Middle School for the 1980–81 school year, where, for the first time, he spent a significant part of his school day in mainstream classes. Specifically, Gene spent sixty percent of his day learning academic subjects in an individual development class and forty percent of his day with the mainstream of students in music, art, shop, home arts, and gym classes.

By the end of the 1980–81 school year, Mr. and Mrs. B. had concluded that the mainstream experience was not beneficial for Gene. He had not been able to accomplish many of the required tasks in his mainstream classes, his academic work in his special education classes was suffering, and he might have been experiencing ridicule from other students. In May of 1981, Mrs. B. requested funding for a summer camp program for Gene. The District's Committee on the Handicapped ("COH") held a meeting, at which plaintiffs were not present, to address the request. At the

meeting, the COH considered Gene's individualized educational program ("IEP")[1] and reclassified him as emotionally disturbed. The COH failed to specify his placement for the coming school year, thus leaving Gene in his current school placement by default. At no time prior to the meeting did the District inform plaintiffs that Gene's IEP would be evaluated at that time.

When Mrs. B. received the revised IEP, she called the chairperson of the COH to discuss Gene's situation and ask for a COH review of his classification and placement. She was particularly unhappy that Gene's classification had been changed from neurologically impaired to emotionally disturbed. The COH chairperson informed Mrs. B. that reconsideration of the classification and placement necessitated additional testing that the District was not able to perform and advised Mrs. B. to have the testing done privately. The chairperson also stated that a COH meeting to address these issues could not be held before the fall.

Over the summer of 1981, plaintiffs had Gene tested at the Child Development and Learning Center of the Long Island Jewish Hillsdale Medical Center (Hillsdale Center). Briefly summarized, the Hillsdale Center's evaluation concluded that Gene's ability to learn was impaired by neurological deficits and that the mainstreaming experience was traumatic and emotionally disturbing for him. The evaluation recommended that Gene not be placed in any mainstream classes, but remain exclusively in a small, structured class with pupils of similar ability. The Hillsdale Center recommended that Gene be enrolled in the state-approved Lowell School.

On September 16, 1981, shortly after the beginning of the 1981-82 school year, the COH met to reconsider Gene's classification and placement. The Hillsdale Center's evaluation and recommendations were presented to the committee. The COH issued a new IEP for Gene, reclassifying him as neurologically impaired. While recognizing that mainstreaming traumatized Gene and that the District lacked any programs that did not include mainstreaming, the IEP nevertheless recommended Gene's continued placement in the Great Neck North Middle School program, with the notation that special support would be provided during mainstreaming.

On September 18, 1981, in a unilateral action, plaintiffs enrolled Gene in the Lowell School. They then challenged the IEP by requesting a review proceeding before an impartial hearing officer. A hearing was initially scheduled for November 18, 1981, but was adjourned at plaintiffs' request for further testing of Gene. Some difficulties ensued over release of certain reports by the Hillsdale Center and transmittal of data from defense counsel to the District. In the meantime, a June 1982 meeting of the COH resulted in no change in Gene's IEP or recommended placement. Finally, on September 24, 1982, the hearing was held.

On January 31, 1983, the hearing officer issued a written decision holding that the District's IEP was inadequate and unsupported by the evidence presented to the COH, and directed the COH to prepare a new and adequate IEP within thirty days.[2] Nonetheless, the hearing officer denied plaintiffs' request for tuition reimbursement for the 1981-82 and 1982-83 school years at the Lowell School. *In the Matter of the Application of a Handicapped Child, by his Parents, for Review of a Recommendation of the Committee on the Handicapped of the Great Neck Free*

---

1. Under the EAHCA, the District is required to establish an IEP for each handicapped child at the beginning of each school year and then review, and if appropriate revise, the IEP at least annually. 20 U.S.C. § 1414(a)(5).

2. Although the adequacy of Gene's IEP is not directly at issue in this case, it should be noted that the COH failed to comply with the hearing officer's direction that a new and adequate IEP be prepared within a thirty day period.

*School District Relating to the Provision of Educational Services* (Impartial Hearing Officer Robert S. Zeif, N.Y., N.Y., Jan. 31, 1983) (Plaintiffs' Exhibit C).

Plaintiffs appealed the denial of tuition reimbursement to the New York State Commissioner of Education. On May 11, 1983, the Commissioner issued an opinion upholding the hearing officer's denial of tuition reimbursement. The Commissioner, however, also addressed the issue of Gene's IEP and the COH's actions concerning the educational placement of the child. In a stronger statement than that of the hearing officer, the Commissioner concluded that the recommended placement in the Great Neck North Middle School program was inadequate and inappropriate for Gene's educational needs. The Commissioner stated:

> The record before me indicates that the program recommended by respondent's COH for petitioners' son is inappropriate to his educational needs. Although a handicapped child must be educated in the least restrictive environment, it does not appear that petitioners' son can benefit at this time from being mainstreamed in non-academic classes. It is apparent that petitioners' son requires a small self-contained special education program.

New York State Education Commissioner's Opinion *In the Matter of the Application of a Handicapped Child, by his Parents, for a Review of a Determination of a Hearing Officer Relating to the Provision of Educational Services by the Board of Education of the Great Neck Union Free School District,* No. 11079, slip op. at 3–4. (May 11, 1983) (Plaintiffs' Exhibit F).

On June 15, 1983, the COH revised Gene's IEP and prospectively recommended placement at the Lowell School for the 1983–84 school year. Nevertheless, the COH refused to reimburse plaintiffs for the school years 1981–82 and 1982–83. Plaintiffs then filed this action.

## II.

The only substantive issue in this case and the subject of the cross-motions for summary judgment is whether plaintiffs are entitled to reimbursement for tuition paid to the Lowell School for the 1981–82 and 1982–83 school years. This covers the period from September 1981, when the COH recommended and Mr. and Mrs. B. unilaterally rejected continued placement in the Great Neck North Middle School's special education program, to mid–1983, when the COH prospectively recommended placement at the Lowell School. It was during this two-year period that the plaintiffs sought review of the COH's September 16, 1981 action and succeeded in having it reversed. The Court does not here review the issue of Gene's placement. Rather, the Court deems it settled at the state administrative level that the Lowell School, not Great Neck North Middle School, was the appropriate placement for Gene during the 1981–82 and 1982–83 school years.

In the view of both the Commissioner and the hearing officer, plaintiffs were not entitled to tuition reimbursement because they acted unilaterally in enrolling Gene in the Lowell School and there were no "exceptional circumstances" or "unique factual situations" warranting an award of tuition in the face of such unilateral placement. *Id.,* slip op. at 3; Impartial Hearing Officer's Opinion, slip op. at 12. The standard of exceptional circumstances or unique facts requires a showing that the child's proposed IEP placement was so inappropriate as to pose a threat to his physical health or that the recommended placement was the result of a bad faith and egregious failure to comply with EAHCA requirements. *E.g., Anderson v. Thompson,* 658 F.2d 1205, 1213–14 (7th Cir.1981).

The District contends that the conclusion of the Commissioner and hearing officer that unilateral placement by parents bars tuition reimbursement absent exceptional

circumstances is correct. In support of this argument, defendant cites that part of the EAHCA which provides that:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardians otherwise agree, the child shall remain in the then current educational placement of such child, ... until all such proceedings have been completed.

20 U.S.C. § 1415(e)(3).

The Fourth Circuit Court of Appeals and other courts have held that, under § 1415(e)(3), unilateral placement is a bar to private school tuition reimbursement. *E.g., Stemple v. Board of Education of Prince George's County,* 623 F.2d 893 (4th Cir.1980), *cert. denied,* 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). The Second Circuit, however, has only denied reimbursement when the private school is not the current placement and it has not been finally determined that the private school is the appropriate placement. *Zvi D. v. Ambach,* 694 F.2d 904 (2d Cir.1982). Nor has the Second Circuit specifically endorsed the proposition that reimbursement of tuition costs hinges on a finding of exceptional circumstances. That proposition, articulated by the Seventh Circuit Court of Appeals in *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981), is based not on § 1415(e)(3), but on an interpretation of the language in § 1415(e)(2) authorizing the grant of "such relief as the court determines is appropriate." In *Anderson,* the Seventh Circuit construed that language to mean that money damages are not "consistent with the goals" of the EAHCA, and held that tuition reimbursement was a form of money damages and thus ordinarily not recoverable under the Act. 658 F.2d at 1213–14.

The Second Circuit has neither adopted nor rejected the *Anderson* Court's conclusion regarding the availability of money damages, particularly tuition reimbursements, under § 1415(e)(2). Rather, the Second Circuit has left open the possibility that tuition reimbursement might be available where the current placement is a private school. *See Zvi D. v. Ambach,* 694 F.2d at 908 n. 8.

Be that as it may, the United States Supreme Court recently rendered the definitive interpretation of § 1415(e)(2) and made clear the correct application of § 1415(e)(3). In *Burlington School Committee v. Department of Education of Massachusetts,* —— U.S. ——, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), Justice Rehnquist, writing for a unanimous Court, addressed both the issue of the scope of relief authorized under the EAHCA and the effect of a unilateral change in educational placement by parents during the pendency of proceedings concerning their entitlement to tuition reimbursement.

In *Burlington School Committee,* the father of a handicapped child rejected a proposed IEP which recommended a public school placement for the child. The father sought review of the IEP under the EAHCA, meanwhile unilaterally placing his child in a state-approved private school. Thereafter, a state administrative agency overturned the IEP as inappropriate and ordered the town of Burlington to reimburse tuition costs for the year of unilateral private school placement. An action was then commenced in federal court. After proceedings in which the dispute reached and was remanded by the First Circuit Court of Appeals on two separate occasions, the United States Supreme Court granted certiorari on the issues of whether (a) tuition reimbursement is a form of relief available under § 1415(e)(2); and (b) unilateral parental placement constitutes a violation of § 1415(e)(3) that bars such reimbursement even if it would otherwise be available.

The Court, per Justice Rehnquist, first considered the availability of tuition reimbursement as a remedy under the EAHCA and concluded that the recovery of tuition payments fell within the scope of relief authorized by § 1415(e)(2). Stating that the language confers broad discretion on a court to fashion appropriate relief, the Court declared that "the only possible in-

terpretation is that the relief is to be 'appropriate' in light of the purpose of the Act." 105 S.Ct. at 2003. Observing that the EAHCA clearly authorizes prospective injunctive relief, Justice Rehnquist reasoned that unless judicial review were to be completed in a matter of weeks, such relief would be insufficient to supply the "free appropriate education" the EAHCA is designed to guarantee.[3] *Id.* Rehnquist pointed out that several years of proceedings would render any successful challenge to an IEP meaningless if in the interim a child were forced to remain in an inappropriate placement and would vitiate the purpose of the EAHCA if the parents were forced to bear the expense for what is later determined to be the appropriate placement. Accordingly, the Court found that reimbursement of tuition is not only an appropriate remedy under § 1415(e)(2), it is necessary to help achieve the goal of providing a free appropriate education for handicapped children. *Id.*

In reaching this result, the Court explicitly rejected the contention that reimbursement of tuition is an award of money damages. Rather, the Court held that where it is finally determined that the contested IEP was inappropriate, reimbursement of tuition is merely a belated payment of a responsibility the school district bore all along. *Id.* Notably, the Court did not condition the recovery of tuition costs on exceptional circumstances.

The Court next turned to the question of whether any entitlement to tuition reimbursement is waived by a parent's unilateral decision to place his child in a private school not recommended by the challenged IEP. The Court concluded that, were § 1415(e)(3)'s command that a child remain in his current placement during review proceedings to be interpreted so as to bar reimbursement for a unilateral change in placement later determined to be the current placement, parents would be forced to choose between a "free" education and an "appropriate" education. *Id.* at 2004. As in his discussion of § 1415(e)(2), Justice Rehnquist reasoned that forcing a child to remain for the interim in an educational program unilaterally determined to be inappropriate or saddling the parents with an expense that would have been the school district's responsibility had a proper IEP been developed defeats the purpose of the EAHCA. Rehnquist noted that it is permissible to ask parents to assume the financial risk that they will not be reimbursed for a unilateral school placement if the challenged IEP placement in another program is upheld. However, it is not in keeping with the intent of the EAHCA to ask parents to risk years of their child's development during the pendency of proceedings contesting an IEP. Correctly construed, § 1415(e)(3) is a bar to removal of a child from the mainstream classroom over parental objection pending review of an IEP that would place a child elsewhere. The provision is intended to preserve the parents' choice during the pendency of their challenge to the proposed IEP, not restrict it. Accordingly, the Court held that a unilateral placement by the parents does not bar an award of tuition reimbursement. *Id.* at 2004–05.[4]

---

**3.** The Act declares that its purpose is:
"to assure that all handicapped children have available to them ... free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of handicapped children and their parents or guardians are protected."
20 U.S.C. § 1400(c).
The Act defines a "free appropriate education" as:
"special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with [an] individualized education program."
20 U.S.C. § 1401(18).

**4.** After the Supreme Court handed down *Burlington School Committee*, the Fourth Circuit declared that its earlier decision in *Stemple*, 623 F.2d 893, had been "superceded" by the Supreme Court's ruling. *Hall v. Vance County Board of Education*, 774 F.2d 629, 633 (4th Cir. 1985).

### III.

Returning to the instant case, it is clear that Gene B., Jr.'s continued placement in the Great Neck North Middle School was inappropriate. The IEP placing him in that school's special education program was held inadequate and inappropriate by the hearing officer and the Commissioner and it was finally determined by the COH that the Lowell School to which plaintiffs unilaterally transferred their son was the appropriate placement for Gene. Thus, under *Burlington School Committee*, it would appear indisputable that plaintiffs are entitled to the tuition reimbursement that they seek. Defendant argues, however, that apart from any other bars to plaintiffs' obtaining reimbursement, Mr. and Mrs. B. caused delays in the review proceedings and should be equitably estopped from recovering tuition expenses for the period of any delay.

It is true that *Burlington School Committee* noted that "equitable considerations are relevant in fashioning relief" under § 1415(e)(2). 105 S.Ct. at 2005. Defendant's contention that plaintiffs should be estopped from reimbursement because they caused long periods of delay, however, is not tenable under the circumstances presented in this case. Assuming for the moment that plaintiffs were solely to blame for the adjournment of the initial hearing before an impartial hearing officer and for the delay in transmittal of certain reports, the Court in balancing the equities must weigh the District's over three month delay in holding the COH meeting that Mrs. B. first requested in the spring of 1981, its inability to hold a hearing during the summer of 1982, its failure to hold a COH meeting within thirty days of the hearing officer's opinion, and its refusal or inability to administer the tests it stated were necessary to assess Gene's placement. Furthermore, there is no evidence that the plaintiffs acted in bad faith in causing any delays. Moreover, in considering the equities the Court must not lose sight of the EAH-CA's goal of providing a free appropriate education to all handicapped children.

Not only do the equities fail to weigh in favor of defendant, the District's estoppel argument contravenes the logic of *Burlington School District's* holding that reimbursement merely requires the belated payment of expenses that would have been borne in the first instance had a proper IEP been developed. *Id.* at 2003. The controlling principle in *Burlington School Committee* is that the school district bears financial responsibility for the educational placement the child should in fact have had. Delay is not the crucial element. Whether the 1981 placement at the Lowell School was finally determined to be correct in 1981 or in 1983 is of minor import insofar as defendant's obligation under the EAH-CA to pay for Gene's tuition is concerned.

In view of the foregoing, the Court holds that plaintiffs are entitled to reimbursement for the tuition expenses of Eugene B., Jr.'s attendance at the Lowell School for the 1981–82 and 1982–83 school years.[5]

### IV.

In addition to the motions by both parties for summary judgment, defendant has also moved for joinder of the New York Commissioner of Education as an indispensable party, pursuant to Fed.R.Civ.P. 19(a), or, alternatively, for an order allowing permissive joinder of the Commissioner under Fed.R.Civ.P. 20.

No prescribed formula or hard and fast measure exists for determining whether a given party is "indispensable" since that question can only be answered within the context of the situation presented by a particular lawsuit. *Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Fed.R.Civ.P. 19(a) establishes the general standard to be whether complete relief can be accorded without the party in question and without impairing or adversely affect-

---

**5.** As the Court holds that tuition reimbursement is available under the EAHCA, it need not address the availability to plaintiffs of relief under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796, or the Civil Rights Act of 1871, 42 U.S.C. § 1983.

ing the rights and obligations of that party or those already joined in the action.[6] The board of education of a union free school district such as defendant is considered a corporate body. N.Y.Educ.Law § 1701; *Mack v. President and Trustees of School Board of Village of Briarcliff Manor,* 171 Misc. 165, 11 N.Y.S.2d 311 (Sup.Ct., Westchester Co., 1939). It can, therefore, sue and be sued, and it is empowered to pay judgment against it, N.Y.Educ.Law § 1709. Unquestionably, it is the school district that is liable for payment of a judgment ordering reimbursement of tuition, not the Commissioner. Hence it would appear that complete relief can be accorded among those already party to the case without joinder of the Commissioner.

Nonetheless, defendant argues that the Commissioner's joinder is necessary to the award and execution of judgment in this case. Defendant asserts that, pursuant to N.Y.Educ.Law § 4402(2)(b)(2), should the Court order reimbursement of tuition, the Commissioner would have to approve what amounts to a retroactive contract with the private Lowell School. The District contends that without securing that approval by joining the Commissioner, there can be no complete relief and defendant's entitlement to state aid for the tuition reimbursement would be impaired.

■ It might have been preferable if plaintiffs had named the Commissioner as an additional defendant. Be that as it may, the Court does not find the Commissioner an indispensable party in this instance. The Commissioner and his department do not bear the liability for payment of tuition. While the Commissioner's decision as to plaintiffs' right to tuition reimbursement gave rise in part to plaintiffs' lawsuit, no regulation, guideline, or policy of his department is the subject of this suit. As to the approval required under Educ.Law § 4402(2)(b)(2), that section, when read in conjunction with § 4401(2), appears merely to give the Commissioner the power to review a placement in a private school in instances when the placement was recommended by a COH and has not been reviewed by a hearing officer and the Commissioner. These provisions, among other things, are a safeguard against shunting the handicapped child off to a private institution instead of seeking to provide education in the public school and the mainstream classroom. But where, as here, the Commissioner has reviewed the child's placement and explicitly held the available public school program inadequate, the private school has state approval, and the child was subsequently placed in the private school, presumedly with the Commissioner's approval, there is little ground for arguing that Educ.Law § 4402(2)(b)(2) constitutes an impediment to complete relief. Furthermore, it is unclear that § 4402(2)(b)(2) requires more than state approval of the private school itself.

Finally, defendant argues that the Commissioner's participation in this action would be particularly enlightening, and he should, therefore, be joined under Fed.R. Civ.P. 20's provision for permissive joinder[7]

---

6. Fed.R.Civ.P. 19(a) provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.....

7. Fed.R.Civ.P. 20(a) states:

(a) *Permissive Joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alter-

even if he is not an indispensable party. If the law on the issue of tuition reimbursement had remained unsettled, the Commissioner's expertise might have been useful. As it stands, however, the intervening Supreme Court decision in *Burlington School Committee* definitively construes the relevant provisions of the EAHCA, eliminating much of the legal controversy surrounding the issues the case presents. The Court does not believe the joinder of the Commissioner would add much to the arguments competently presented by the parties or alter the outcome of the lawsuit.

Accordingly, defendants' motion pursuant to Fed.R.Civ.P. 19, 20 to join the Commissioner of Education is denied.

### V.

For the reasons set forth above, the Court hereby grants plaintiffs' motion for summary judgment and denies defendant's cross-motion for summary judgment. In addition, the Court concludes that the New York State Commissioner of Education is not an indispensable party to this action and denies defendant's motion that the Commissioner be joined as a party. The Court does not now address the plaintiffs' request for an award of costs and attorneys fees. The parties have not had the opportunity to present legal argument on the appropriateness of such an award, nor have plaintiffs submitted a schedule of fees and costs for review by the Court.

Accordingly, summary judgment is granted in favor of plaintiffs. The Clerk of the Court is directed to enter judgment for plaintiffs Eugene and Kathe B. and against defendant Great Neck Union Free School District, ordering defendant to reimburse plaintiffs for the cost of tuition at the Lowell School for the 1981–82 and 1982–83 school years.

SO ORDERED.

native any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested

in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.