### BOARD OF EDUCATION OF MONTGOMERY COUNTY

v.

### Anne HUNTER, a minor, by her parents and next friends, Bruce and Julie HUNTER.

### No. CIV.JFM–99–1153.

United States District Court, D. Maryland.

Feb. 16, 2000.

---

Jeffrey A. Krew, Columbia, MD, Eric Charles Brousaides, Reese & Carney, Columbia, MD, for plaintiff.

Matthew B. Bogin, Bogin and Egin, Washington, DC, Michael J. Eig, Eig, Parker and Starbuck, Washington, DC, for defendants.

## MEMORANDUM OPINION

MOTZ, Chief Judge.

This case is before the Court on cross-motions for summary judgment filed by the Plaintiff, the Board of Education of Montgomery County, Maryland, ["the Board"], and the Defendants, Anne Hunter ["Hunter"] by her parents, Bruce and Julie Hunter. The Board is appealing the order of an Administrative Law Judge ["ALJ"] requiring the Montgomery County Public Schools ["MCPS"] to reimburse the Defendants, pursuant to the Individuals with Disabilities Education Act ["IDEA"], for their unilateral placement of Hunter in the Katherine Thomas School for the 1998–99 school year.

## I.

Anne Hunter was born on March 12, 1989, and is a resident of Montgomery County. She has a complex educational and psychological profile. Although her academic achievement exceeds expectations for someone in her IQ range and she has superb musical talents, Hunter has significant social difficulties and requires strong individual support to learn. She is also epileptic and has suffered several seizures since January 1998. She qualifies as a student with multiple disabilities as defined by the IDEA.

From 1994 to 1996, Hunter attended pre-kindergarten and kindergarten programs at Bethesda Country Day School, which is a regular education school. In 1996, she enrolled in the Katherine Thomas School for first grade. Katherine Thomas is a private, special education school comprised solely of students with disabilities. MCPS paid for Hunter's placement at Katherine Thomas pursuant to the order of an administrative law judge, and continued to fund her placement there for the 1997–98 school year. During her time at Katherine Thomas, Hunter has made acceptable academic progress.

In June 1998, MCPS convened a Central Admission, Review, and Dismissal ["CARD"] committee meeting to discuss Hunter's placement for the upcoming school year. The meeting was attended by officials from MCPS, the Katherine Thomas School, Hunter's parents, and their attorney. At the meeting, MCPS adopted the individualized education plan ["IEP"] formulated for Hunter by the Katherine Thomas School. MCPS then recommended that Hunter be placed at the learning center at Burning Tree Elementary School in the second/third grade class. Hunter's parents, however, rejected the placement; they believed that the child

should remain at Katherine Thomas. A second CARD committee meeting convened on October 26, 1998, to consider how the recent intensity of Hunter's epilepsy might affect her educational needs. MCPS proposed that it could meet Hunter's needs by adding a health services to her IEP. Hunter's parents once again rejected the Burning Tree placement. Hunter currently attends the Katherine Thomas School.

Hunter's parents requested a due process hearing, which took place in December 1998 and January 1999. At the hearing, they contended that the Burning Tree placement would be inappropriate for a variety of reasons.[1] Most significantly, they argued that the proposed mainstreaming was improper for the child and moving her to Burning Tree would be a step backwards. The ALJ issued an opinion and order on March 3, 1999, requiring MCPS to reimburse Hunter for her education at Katherine Thomas for the 1998–99 school year because the school district did not provide her with a "free appropriate public education" ["FAPE"] as required by the IDEA. In particular, the ALJ found that Burning Tree would not provide proper mainstreaming for Hunter because her "emotional fragility makes it impossible for her to be with non-disabled students in a hectic school atmosphere such as Burning Tree." ALJ Op. at 18. In addition, the ALJ determined that Burning Tree could not meet the goals of Hunter's IEP because it is not able to provide the type of individualized instruction necessary for her educational progress. *Id.* at 20.

## II.

■ Under the IDEA, every disabled child is entitled to a free appropriate public education ["FAPE"]. *See* 20 U.S.C.

---

1. Hunter's parents also contended that: (a) MCPS had ignored the professional opinion of educators; (b) MCPS had not developed a timely transition plan; (c) Burning Tree would not be safe for Hunter; (d) MCPS did not know the child; (e) MCPS never raised the issue that Katherine Thomas was an inappropriate placement; and (f) MCPS had provided no reason to move the child.

§ 1400(d); *Board of Educ. of Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Although the Act does not require a school to maximize the child's potential, the child must receive "access to specialized instruction and related services that are individually designed to provide educational benefit[,]" *Rowley,* 458 U.S. at 201, 102 S.Ct. 3034, 73 L.Ed.2d 690, and the educational placement must be "likely to produce progress, not regression or trivial educational advance[,]" *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 636 (4th Cir.1985). The "free appropriate public education" ["FAPE"] standard is embodied in the IEP, which is a plan for the disabled child's education developed collaboratively by the child's parents, teachers, and local school officials. *See Fritschle v. Andes,* 45 F.Supp.2d 500, 504 (D.Md.1999).

■ Parents who disagree with school authorities about their child's placement may unilaterally enroll the child in a private school and request retroactive reimbursement. *See School Comm. of Burlington v. Department of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). If the school district's IEP is inappropriate and the private placement is proper, the school district may be ordered to reimburse the parents for their expenses. *See id.* The essential question in such a case is whether the private placement confers an educational benefit on the child. *See Fritschle,* 45 F.Supp.2d at 504.

■ Parents aggrieved by IDEA decisions are entitled to a due process hearing before an impartial administrative decision-maker, *see* 20 U.S.C. § 1415(f)(1), and parties aggrieved by the administrative decision may file suit in federal district court, *see* 20 U.S.C. § 1415(i)(2)(A). The burden of proof is on the party challenging the administrative decision. *See Barnett v.*

*Fairfax County School Bd.,* 927 F.2d 146, 152 (4th Cir.1991).

■ In reviewing administrative decisions, courts will review the records of the administrative proceedings, hear additional evidence at the request of a party, and make a decision based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B). Courts are circumspect in their review of administrative tribunals under the IDEA. Although a district court should make an "independent decision based on a preponderance of the evidence," it must also give "due weight" to the state administrative proceedings. *See Doyle v. Arlington County School Bd.,* 953 F.2d 100, 103 (4th Cir.1991). Courts should consider the hearing officer's findings of fact to be prima facie correct. *See id.* at 105. If the court decides not to accept the facts, it must explain its departure. *See id.* What weight the court should give to an administrative hearing is also influenced by the procedures followed at the hearing. If the hearing officer departs significantly from the accepted norms of the fact-finding process, then the court is not required to give any weight to the officer's factual findings.[2] *See id.*

■ The Board first challenges the ALJ's finding that "the learning center at Burning Tree does not have the ability to differentiate instruction and develop individualized lessons for students based on their IEP goals." ALJ Op. at 18–19. According to the Board, this conclusion is contrary to the testimony of the witnesses most knowledgeable about the Burning Tree program——the employees of Burning Tree.

The Court disagrees. The record shows that the ALJ heard testimony from Burning Tree employees and Ms. Suzanne Keith Blattner, a private educational consultant and tutor to Anne Hunter. The Burning Tree employees testified that the

**2.** Because this matter is pending before the Court on cross-motions for summary judgment, the well-settled principles of summary judgment also apply. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

school's program could fulfill the requirements of Hunter's IEP and allow the child to make educational progress. In contrast, Blattner opined that Burning Tree does not provide a differentiated level of instruction, which Hunter needs to succeed. Faced with such contradictory testimony, the fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility. *See Doyle*, 953 F.2d at 104. *McCrary v. Runyon*, 515 F.2d 1082, 1086 (4th Cir.1975). Here, the ALJ found that Blattner was "credible" and her testimony withstood the Board's cross-examination. ALJ Op. at 20. Moreover, despite Blattner's role as Hunter's tutor, the ALJ considered her the "least influenced by an existing relationship with one of the parties." *Id.* at 20 n. 3. These credibility determinations are uniquely within the realm of the fact-finder and reflect no deviation from the normal fact-finding process.

The Board argues that the ALJ improperly rejected the testimony of the Burning Tree employees for no reason other than their connection with the school. The Court disagrees. Clearly, the ALJ found Blattner more believable than the Burning Tree employees, but there is no evidence that he found the employees' testimony incredible or disregarded the testimony based solely on the employees' affiliation. To the contrary, the record shows that the ALJ made a detailed review of the testimony and exhibits in the case, choosing in the end to believe Blattner's testimony over that of the Burning Tree employees. Because such weighing of testimony is a common part of the fact-finding process, there was no error in the ALJ's decision.

The Board also argues that the Katherine Thomas placement will not provide Hunter with the "least restrictive learning environment." In support of this contention, the Board asserts that placement at Katherine Thomas is contrary to the IDEA and 34 C.F.R. 300.500, which require school districts to ensure that disabled children are mainstreamed to the maximum extent appropriate. The Board has not identified any diversion from the norms of fact-finding that would warrant a re-examination of the ALJ's conclusions. Therefore, given that the ALJ found that MCPS failed to provide Hunter with a FAPE, the Board's argument is inconsequential. The IDEA requires states to provide for the maximum appropriate extent of mainstreaming, but the Act also makes clear that mainstreaming is inappropriate when it results in no educational benefit for the child. *See* 20 U.S.C. § 1412(a)(5); *Stockton v. Barbour County Bd. of Educ.*, 112 F.3d 510, 1997 WL 225483, at * 4 (4th Cir.1997).

In a related argument, the Board contends that the record does not support the ALJ's conclusion that Hunter is too emotionally fragile to attend Burning Tree. The Court disagrees. Ms. Blattner testified that Hunter needs stability in her learning environment, is frightened by unfamiliar situations, and is confused by a large-school setting. The ALJ agreed with Blattner's conclusion that these factors would make it difficult for Hunter to benefit from the program at Burning Tree. The ALJ gave "considerable weight" to Blattner's testimony and found her conclusions "persuasive." ALJ's Op. at 16. Because the record clearly supports the ALJ's conclusions, the Court finds no reason to disturb them.

Finally, the Board argues that the ALJ improperly determined that the health care services available at Katherine Thomas were sufficient to address Hunter's medical needs. The ALJ found that both Katherine Thomas and Burning Tree would provide safe environments for the student. ALJ Op. at 21. Although Katherine Thomas does not have trained medical personnel on staff, as does Burning Tree, the ALJ noted that Katherine Thomas has a number of staff members trained in CPR and is next door to Shady Grove Hospital. *Id.* Because there was no error in the process leading to these conclusions, Court will not disturb the ALJ's findings.

For these reasons, the Court finds no error in the ALJ's findings.