JUSTIN G., a minor, by his parents and next friends, GENE R. and Jacalyn A. G, et al., Plaintiffs,

v.

BOARD OF EDUCATION OF MONTGOMERY COUNTY and Jerry D. Weast, (Officially as Superintendent Board of Education of Montgomery County), Defendants.

No. CIV.A. AW–00–2019.

United States District Court, D. Maryland, Southern Division.

May 31, 2001.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.* and corresponding state laws ensuring equal educational opportunities to children with disabilities. This is an appeal from the final decision of the Maryland State Department of Education denying tuition reimbursement to Gene and Jacalyn G., the parents of Justin G., for the 1998–1999 and 1999–2000 school years. Currently pending before the Court is Defendant's Motion for Summary Judgment. The motion has been fully briefed by all parties. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the Defendant's motion, the Court makes the following determinations.

## I. FACTUAL BACKGROUND

The relevant facts have been drawn from the decision of the presiding Administrative Law Judge ("ALJ"). Justin G. is a ten-year-old boy diagnosed with attention deficit-hyperactivity disorder and pervasive developmental disorder (a species of autism). The child's disabilities came to light before he was of school age. There is no dispute that Justin qualifies as a child with disabilities and is covered by the IDEA.

This saga between his parents and the Montgomery County Public School system ("MCPS") began almost five years ago when the parents unilaterally enrolled Justin at the Katherine Thomas School ("KTS") in 1995. The parents subsequently requested reimbursement from MCPS for the private school tuition. MCPS denied the request. Thereafter, for the 1995–96, 1996–97, 1997–98, 1998–1999, and 1999–2000 school years, MCPS has sought to place Justin at programs other than KTS, primarily the School–Based Learning Center ("SBLC") at the Mill Creek Towne Elementary School. The parents rejected any placement other than KTS. Throughout the appeals process and ensuing litigation, the parents have continued to enroll the child at KTS. The present action is limited to the disputes over the 1998–1999 and 1999–2000 school years.

### A. The 1998–1999 School Year

For the 1998–1999 school year, the ALJ made the following findings of fact. On March 18, 1997, Mrs. G. wrote a letter to MCPS sufficiently providing notice of the parents' rejection of Justin's public placement at the SBLC in Mill Creek Towne Elementary School and their request for private placement at KTS. In April or May of 1998, the KTS staff, the parents, and Dr. Laura Solomon prepared their own Individualized Educational Program ("IEP") for the 1998–1999 school year. On May 29, 1998, Mr. G. authorized implementation of KTS's IEP. On June 1, 1998, the parents signed an enrollment contract with KTS.

On August 24, 1998, the parents, through their attorney, wrote a letter to MCPS requesting educational services for Justin. Almost a month later, MCPS responded in a letter dated September 21, 1998. The letter scheduled a CARD ("Central Admission, Review and Dismiss-

al") meeting on September 28, 1998.[1] The letter also asked to observe the child at Kennedy–Kreiger. Justin never attended this school. Apparently, the reference to Kennedy–Kreiger was a mistake and MCPS intended to request observation at KTS. The parents, through counsel, responded in a letter dated September 25, 1998 requesting that the September 28, 1998 meeting be postponed to allow for MCPS's observation of Justin at KTS and his KTS teachers' participation. Accepting the request, MCPS suggested rescheduling the meeting for either October 13, 1998 or October 19, 1998. In a letter dated October 7, 1998, the parents informed MCPS that they would be available on November 4, 1998. The parties agreed to this date. Thereafter, Dr. Suzanne Speicher, a placement specialist for MCPS, observed Justin at KTS on October 29, 1998.

At the November 4, 1998 meeting, the parents submitted a private speech and language evaluation report. The CARD committee decided to postpone development of the IEP in order to review the report and await completion of educational and occupational therapy assessments. MCPS offered to conduct the assessments. The parents expressed a desire for private assessments. MCPS agreed.

Without developing an interim IEP, MCPS advised the parents, in a letter dated November 13, 1998, to place Justin at the SBLC until the IEP was finalized.[2] The parents declined to the invitation and continued the child's placement at KTS. The parties proceeded to gather the information for Justin's IEP. On November 25, 1998, Dr. Solomon prepared an educational evaluation for the child. In January 1999, the parents submitted their private educational assessment. On March 8, 1999, the parents submitted the private occupational therapy assessment. On the same date, for a second time, Dr. Speicher observed Justin at KTS.

Thereafter, MCPS scheduled an IEP meeting for March 24, 1999. Plaintiffs' counsel was not available on that date. In response, MCPS offered alternative dates, scheduled approximately two months later than the March date, May 25, 1999 and June 2, 1999. It was finally agreed that the IEP meeting would be held on June 4, 1999. By that time, the 1998–1999 school year was essentially over. The IEP developed at that meeting recommended Intensity 5 services at the SBLC in Mill Creek Towne Elementary School with zero percent (0%) mainstreaming.[3] The IEP also included ninety (90) minutes of speech and language therapy, ninety (90) minutes of occupational therapy, and thirty (30) minutes of counseling. Ultimately, MCPS applied the IEP developed at the June 4, 1999 meeting to the 1999–2000 school year.

1. A CARD Committee meeting must be scheduled for an evaluation of the student and recommendation for appropriate services. The CARD Committee meeting must be open to the child's parents, who shall be notified of the meeting at least 10 days in advance. Md. Code Ann., *Educ.* § 8–405 (1998). As gathered from the date of MCPS's letter, the district did not give the parents the required ten days advanced notice of the CARD meeting scheduled for September 28, 1998.

2. The interim placement was apparently based upon the 1996 IEP recommendation.

3. Mainstreaming implicates the obligation of public officials to place the child in the least restrictive environment (LRE) that will provide him with a meaningful educational benefit. *See* 20 U.S.C.A. § 1412(5)(B). Mainstreaming describes "efforts to include the child in school programs with nondisabled children whenever possible." 3 Americans With Disabilities: Practice & Compliance Manual § 11:100 (C. Angela Van Etten ed.,1999).

## II. DISCUSSION

### A. IDEA

■ The IDEA provides federal funds to assist state and local education authorities in providing equal educational opportunities to children with disabilities. See 20 U.S.C. §§ 1400, et. seq. "[T]he 'basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefits to the handicapped child." Board of Educ. v. Rowley, 458 U.S. 176, 201, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982) (hereinafter Rowley) (footnote omitted). The receipt of federal funds requires state and local authorities to comply with extensive procedural requirements. Essential to such compliance is the existence of a state policy that "assures all handicapped children the right to a free appropriate public education ("FAPE")".[4] Rowley, 458 U.S. at 179, 102 S.Ct. at 3037(quoting 20 U.S.C. § 1412(1)(1994)). Maryland has enacted laws and regulations designed to meet its obligations under the IDEA. See Md.Code. Ann. § 8–406, et seq., (1999); Md. Regs. Code tit. 13A, § 13A.05.01.16(B)(3)(d) (1999).

A FAPE is provided to a child through an IEP, a specially designed program of instruction for the child. See 20 U.S.C. §§ 1401(a)(19); 1412(a)(4); Board of Educ. of Montgomery County v. Hunter ex rel. Hunter, 84 F.Supp.2d 702, 705 (D.Md. 2000); Fritschle v. Andes, 45 F.Supp.2d 500, 504 (D.Md.1999). The statute contemplates parental participation in the development of the IEP. See 20 U.S.C. § 1401. The IEP must include a statement of the child's annual educational goals, the specific educational services to be provided, and the projected date for initiation and duration of such services. See id. Under the IDEA, district courts are authorized to order reimbursement for special education expenses, including private school tuition, if the parents can prove that the public schools' placement was not providing the child with a FAPE and that the parents' alternative placement was appropriate. See 20 U.S.C. § 1415(e)(2); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 14, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993) (hereinafter "Florence"); School Comm. of Town of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 369–70, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985) (hereinafter "Burlington").

### B. Standard of Review

■ In reviewing state administrative decisions under the IDEA, the Court must determine (1) if the state or local educational authority complied with the statutory procedures and (2) whether the IEP was reasonably calculated to enable the child to receive educational benefits. See Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). In the analysis, courts will examine the records of the administrative proceedings, and hear additional evidence at the request of a party. See 20 U.S.C. § 1415(e)(2). Giving "due weight" to the state administrative proceedings, district courts should make an "independent decision based on a preponderance of the evidence" as to whether the school district provided the child with a FAPE. See Doyle v. Arlington

---

4. A "free appropriate public education" is defined as special education and related services that (1) are provided at public expense, under public supervision and direction, and without charge; (2) meet the standards of the State's educational agency; (3) include an appropriate preschool, elementary or secondary school education in the State; and (4) are provided in conformity with the student's IEP. 20 U.S.C. § 1401(a)(8).

*County School Bd.*, 953 F.2d 100, 103 (4th Cir.1991). The findings of fact in the state administrative decision are considered to be prima facie correct. *See id.* at 105. In rejecting such findings, the court must explain its departure. *See id.*

The Court's review of Defendant's Motion for Summary Judgment is also subject to the Federal Rules of Civil Procedure. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D.Md. 1998). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts, by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial, from which the finder of fact could reasonably find for him or her. *See* Fed.R.Civ.P. 56(c), (56)(e); *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

### C. *1998–1999 School Year*

#### 1. *Denial of a Free Appropriate Public Education*

The parties do not dispute that, for the 1998–1999 school year, the MCPS failed to develop an IEP for Justin. The ALJ also found that the parents' March 1997 letter to MCPS provided adequate notice of Justin's need for services. School districts receiving funding under the IDEA are obliged to ensure the development or revision of an appropriate IEP for each child by the beginning of the school year. *See* 20 U.S.C. § 1414(a)(5). Thus, the complete failure to develop an IEP for a disabled child prior to the beginning of the school year constitutes a serious violation of the IDEA. *See Gadsby By Gadsby v. Grasmick*, 109 F.3d 940, 950 (4th Cir.1997). In *Gadsby By Gadsby*, although the parents had given the school district four months prior notice, the district failed to develop an IEP for the child before commencement of the school year. *Id.* at 945. Consequently, the parents unilaterally placed the child in a private school. *Id.* The Fourth Circuit ruled that *Burlington* and *Florence* "make clear that ... reimbursement of ... private school tuition is an appropriate remedy under IDEA where the [school district] fails to develop an appropriate IEP by the beginning of the school year." *Id.* at 950.

Here, the ALJ found that, despite the complete failure to develop or revise an IEP for the 1998–1999 school year, MCPS's "good faith" efforts to develop an IEP sufficiently provided Justin with a FAPE. In finding that MCPS provided a

FAPE, the ALJ accepted the district's contention that its failure to develop an IEP was primarily the parents' fault. Relying on *Gadsby By Gadsby,* the ALJ found that the procedural violation of failing to develop an IEP did not affect the provision of a FAPE to Justin. Instead of focusing on whether the district developed a plan reasonably calculated to address the child's educational needs, the ALJ adopted an analysis where the sins of the father are visited upon the son. The ALJ apparently merged the analysis of whether MCPS fulfilled its duty to offer a FAPE to Justin with the final judicial consideration of whether the unreasonableness of the parents may justify a denial or reduction in the grant of reimbursement even in the face of a denial of a FAPE. However, the two considerations are separate and apart.

■ In *Gadsby By Gadsby* and other cases excusing technical violations in the IEP process, the procedural violations involved the failure to give the required parental notice and the failure did not negatively impact the development of the IEP or the provision of a FAPE. *See* 109 F.3d at 956. While not liable for failing to give the parents notice of the rejection, the state agency in *Gadsby By Gadsby* was liable for the local agency's complete failure to develop an IEP. *See* 109 F.3d at 955. "Central to the provision of a free appropriate public education is the development of an IEP by the [local education agency] for each child with a disability within its jurisdiction." *Id.* at 950. It is undisputed that no IEP was developed for the 1998–1999 school year. Such a violation goes to the heart of the district's ability to provide a FAPE and resulted in a denial thereof. *See id.; Tice By and Through Tice v. Botetourt County Sch. Bd.,* 908 F.2d 1200, 1207 (4th Cir.1990) ("[W]here the School Board had taken no steps to implement an IEP ..., ... [t]here

is simply no question that [the child] was not receiving a FAPE."). The ALJ's finding to the contrary constituted legal error. As to the 1998–1999 school year, the Court finds that genuine issues of material fact exist as to the ALJ's finding that MCPS provided Justin with a FAPE as required by the IDEA.

### 2. *Appropriateness of Private School Placement*

■ In determining entitlement to reimbursement under the *Florence/Burlington* analysis, the Court next considers whether the private school placement chosen by the parents for the 1998–1999 school year was an appropriate placement. *See Florence,* 510 U.S. at 14, 114 S.Ct. at 366. Because the ALJ found that the MCPS provided a FAPE, Judge Golden did not consider whether KTS provided an appropriate placement of Justin in the 1998–1999 school year. However, there is sufficient evidence in the administrative record to create a genuine issue of material fact as to whether KTS qualified as an appropriate placement. First, the ALJ's finding that, during his time at KTS, Justin showed improvement supports the appropriateness of the KTS placement. Specifically, Judge Golden found that, as of January 1999, "he was more available for learning and less time had to be spent managing his behavior." (Ex. 1 at 12).

■ MCPS argues that KTS is an inappropriate placement because the school only caters to children with disabilities. Generally, a segregated environment does not disqualify schools that specialize in educating disabled children. *See Warren G. v. Cumberland County Sch. Dist.,* 190 F.3d 80, 86 (3d Cir.1999); *Muller By Muller v. Comm. on Spec. Educ. of E. Islip Union Free Sch. Dist.,* 145 F.3d 95 (2d Cir.1998); *Cleveland Heights–University Heights City Sch. Dist. v. Boss,* 144

F.3d 391, 399–400 (6th Cir.1998). "The IDEA requires states to provide for the maximum appropriate extent of mainstreaming, but the Act also makes clear that mainstreaming is inappropriate when it results in no educational benefit for the child." *Hunter ex rel. Hunter,* 84 F.Supp.2d at 706. The 1999–2000 IEP for the child recommended zero percent (0%) mainstreaming. It would be contrary to the dictates of the IDEA to find a private school to be inappropriate based upon its offering of a service that is explicitly called for in the IEP itself.

■■■■■ The Court also notes that the recent placement of Justin at KTS is strong evidence that the placement was appropriate for addressing his educational needs. *See Matthew J.,* 989 F.Supp. at 394. "In addition to reviewing the administrative record, courts are empowered to take additional evidence at the request of either party . . . .'" *Honig v. Doe,* 484 U.S. 305, 312, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988) (quoting 20 U.S.C. § 1415(e)(2)). Courts have construed "additional evidence" to mean supplemental to the administrative record. *See Springer v. Fairfax County School Bd.,* 134 F.3d 659, 667 (4th Cir.1998). "The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Town of Burlington v. Dep't of Educ. of Mass.,* 736 F.2d 773, 790 (1st Cir.1984), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

■■■■■ MCPS argues that the recent placement of Justin at KTS is not "additional evidence" within the meaning of 20 U.S.C. § 1415(e)(2). The Court disagrees. Such evidence properly supplements the record by giving the Court a complete picture of the child's needs and whether KTS could meet his special needs. *See Mavis v. Sobol,* 839 F.Supp. 968, 979 (N.D.N.Y.1993). Similarly, the information could not have been introduced during the administrative hearing as the placement was subsequent to the ALJ's decision. *Cf. King v. Board of Educ. of Allegany County, Maryland,* 999 F.Supp. 750, 775 (D.Md.1998).

Equally important, the new IEP placement for Justin does not qualify as the type of evidence traditionally excluded by courts. This information was not available to the parents at the time of the administrative hearing nor can the evidence be characterized as repetitive or embellished witness testimony. *See Springer,* 134 F.3d at 667 (approving "the exclusion of testimony from all who did, or could have, testified before the administrative hearing"). After reviewing the administrative record and the additional evidence submitted by the parents, the Court finds that the parents have shown that a genuine dispute of material fact exists as to whether KTS was an appropriate placement for Justin in the 1998–1999 school year.

### 3. *Denial or Reduction for Unreasonableness of Parents*

■■■■■ The Court also finds that genuine issues of material fact exist as to the ALJ's finding that the conduct of the parents justifies a complete denial of tuition reimbursement. Courts have repeatedly rejected arguments of delay by parents justifying clear-cut violations of the IDEA. *See Matthew J. v. Mass. Dep't of Educ.,* 989 F.Supp. 380, 393 (D.Mass.1998) (rejecting claims that parents' failure to return forms and authorize necessary evaluations supported contention that the parents sabotaged the district's efforts to create or locate an appropriate education-

al program for the child); *Eugene B. Jr. By Eugene and Kathe B. v. Great Neck Union Free School Dist.,* 635 F.Supp. 753, 759 (E.D.N.Y.1986) (rejecting claim that parents' alleged delay of pertinent hearings should equitably bar them from obtaining reimbursement for tuition costs incurred in unilateral private placement). Likewise, absent a showing of bad faith, parents taking an adversarial or uncooperative stance in advocating for their child's right to a FAPE does not justify a complete denial of reimbursement. *See Warren G.,* 190 F.3d at 86; *Board of Educ. of Cabell County v. Dienelt,* 843 F.2d 813, 814 (4th Cir.1988).

■■■ In coming to her conclusion that the parents bear almost all of the blame for the district's failure, the ALJ focused entirely on the exchanges between the parties that occurred *after* MCPS already violated its statutory duty to develop an IEP for Justin before the beginning of the school year. The district had notice of Justin's special needs well in advance of the commencement of the 1998–1999 school year. Yet, the district did not even begin to attempt scheduling proceedings until September 21, 1998 and, this was done only after the parent's second notice dated a month earlier on August 24, 1998. The ALJ completely ignored this blatant violation of the commands of the IDEA. Instead, the ALJ's decision put the onus on parents to monitor and police the district's development of the IEP. Such a shift in burdens and responsibilities under the IDEA is improper and inconsistent with the dictates of the IDEA. *See* 20 U.S.C. § 1412(a)(4); *Matthew J.,* 989 F.Supp. at 393. "Congress carefully delineated responsibilities under IDEA, delegating specific duties to the [local education agency] ...." *See Gadsby by Gadsby,* 109 F.3d at 954. Only MPCS had a statutory duty to affirmatively and expedi-

tiously prepare an IEP for Justin before the commencement of the 1998–1999 school year. *See* 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.342(a). "[T]he task of education belongs to the educators who have been charged by society with that critical task." *Hartmann v. Loudoun County,* 118 F.3d 996, 1000 (4th Cir.1997) (quoting *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051). Although the parties were embroiled in conflict over Justin's private placement in prior years, "[c]hildren are not static beings; neither their academic progress nor their disabilities wait for the resolution of conflicts." *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 760 (3d Cir.1995).

Equally important, in balancing the equities, the ALJ only looked to the delays attributable to the parents or their counsel and completely ignored the delays attributable to MPCS. Although MPCS received notice of Justin's needs in March 1997, the record does not reflect any activity by the district toward developing an IEP until September 21, 1998. It took the district almost a month to respond to the parent's second request. When the district did respond, it included a confusing request to observe the child at a school he never attended. At the November 4, 1998 meeting, the district decided not to develop an IEP due to the need for more current educational data about the child. However, if the district had initiated proceedings earlier in the year, this may not have been an issue. Dr. Speicher, MCPS's own placement specialist, did not observe the child until March 8, 1999. After the parent's requested rescheduling of the March 24, 1999 date due to their attorney's unavailability, MCPS elected to offer new dates over two months later.

Furthermore, the ALJ made her determination without considering the reasons for each parties' delay. The record lacks

any evidence that the parents acted in bad faith or with the purpose of frustrating the district's efforts at preparing an IEP for the 1998–1999 school year. *Cf. Warren,* 190 F.3d at 86. By contrast, there is also no evidence explaining why MCPS failed to develop an IEP before the 1998–1999 school year when school officials had the requisite advanced notice of Justin's needs.[5] As to the events that occurred after September, federal regulations provide avenues for district officials to proceed with the development of an IEP when parents are either unwilling or unable to participate in IEP meetings. *See* 34 C.F.R. § 300.345. There is no evidence that MCPS attempted to take advantage of such vehicles throughout the 1998–1999 year. No interim IEP was developed. MCPS did not even suggest an interim placement for Justin until November 13, 1998. In this instance, the scheduling difficulties with the parents did not impede MCPS's ability to develop an IEP for Justin. Given the district's utter failure to develop an IEP for their child when school officials received notice of Justin's needs over a year in advance, a genuine dispute of material facts exists as to the propriety of the ALJ's findings that the parent's actions justified a complete denial of reimbursement.

### D. *Preserving the Right to Reimbursement*

■ As a final matter, MCPS argues that, under 20 U.S.C. § 1412(a)(10)(C)(ii), the parents are not entitled reimbursement because Justin was never enrolled in the public school system. The Court finds that such a construction of the IDEA would produce the absurd result of barring children from receiving a FAPE because

their disabilities were detected before they reached school age. MCPS's disturbing interpretation would also place parents of such children in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement. The Supreme Court has expressly rejected saddling parents of disabled children with such a pyrrhic victory. *See Burlington,* 471 U.S. at 369–70, 105 S.Ct. at 2003. Therefore, the Court finds that the parents are not barred from seeking reimbursement because Justin has not attended public school. Accordingly, the Court denies Defendant's Motion for Summary Judgment as to the 1998–1999 school year.

### E. *1999–2000 School Year*

■ The parents also seek review of the ALJ's finding that MCPS provided Justin with a FAPE for the 1999–2000 school year. As the party seeking reversal of the ALJ's determination, the parents have the burden of proving that the 1999–2000 IEP was inappropriate. *See Barnett v. Fairfax County Sch. Bd.,* 927 F.2d 146, 152 (4th Cir.1991). Furthermore, the summary judgment standard requires the nonmoving party to come forward with specific evidentiary facts supporting their position. *See supra* Part II.B.

■ Here, there is no evidence of procedural violations by MCPS for the 1999–2000 school year. Furthermore, the parents have not sustained their burden of demonstrating the insufficiency of the 1999–2000 IEP. The IDEA requires state and local educators to provide disabled children with access to specialized instruc-

---

5. The record also indicates that this is not the first time that MCPS failed to develop an IEP for the child before commencement of the school year. For the 1996–97 school year, MCPS did not hold a CARD meeting for the development of an IEP until October 8, 1996 even though the parent had made a prior funding request.

tion and support services individually designed to provide educational benefits to the child. *See King v. Board of Educ. of Allegany County, Maryland,* 999 F.Supp. 750, 767–68 (D.Md.1998). In evaluating whether an IEP is reasonably calculated to provide educational benefits, courts have considered four factors: "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) services are provided in a coordinated and collaborative method by the key 'stakeholders' in the child's education; and (4) positive academic and non-academic benefits are demonstrated by the program." *King,* 999 F.Supp. at 767–68.

▮ In the present case, the SBLC program offered the special services recommended in the 1999–2000 IEP. The SBLC offered a class size and teacher-student ratio suited to Justin's needs. The ALJ noted that, like Justin, at least one student with recommended 0% mainstreaming was enrolled at the SBLC. The ALJ also heard and considered the testimony of the respective educational experts as to the appropriateness of the SBLC placement. The witnesses provided by MCPS testified that the SBLC was an appropriate placement. The witnesses provided by the parents testified that it was not. "Faced with such contradictory testimony, the fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility." *Hunter ex rel. Hunter,* 84 F.Supp.2d at 706. Although finding both parties' witnesses to be credible, the ALJ simply found the school district's witness to be more persuasive.

Likewise, proving that KTS provided a better, or even the best, program suited to their child's special needs does not render the proposed public placement "inappro-

priate" under the IDEA. *See Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 983 (4th Cir.1990); *Hessler v. State Bd. of Educ. of Maryland,* 700 F.2d 134, 139 (4th Cir.1983). Although the students at Mill Creek Towne Elementary were temporarily relocated to another building during renovations, the parents have provided no evidence showing that this would have adversely affected Justin's ability to receive educational benefits. Similarly, there is no evidence that the month-long delay in the ALJ rendering her decision resulted in a denial of Justin's access to a FAPE. The Court finds that the parents have not shown that a genuine dispute of material fact exists as to the appropriateness of the IEP for the 1999–2000 school year.

▮ "[O]nce a procedurally proper IEP has been formulated, a reviewing court should be reluctant indeed to second-guess the judgment of education professionals." *Tice By and Through Tice,* 908 F.2d at 1207. "Rather, [courts] must defer to educators' decisions as long as an IEP provided the child 'the basic floor of opportunity that access to special education and related services provides.'" *Id.* (quoting *Rowley,* 458 U.S. at 201, 102 S.Ct. at 3048). After an independent review of the evidence and giving due weight to the findings of the ALJ, the Court finds no reason to disturb the denial of tuition reimbursement for the 1999–2000 school year. Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to the 1999–2000 school year.

### III. CONCLUSION

For the reasons stated above, the Court will grant-in-part and deny-in-part Defendant's Motion for Summary Judgment. An Order consistent with this Opinion will follow.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion dated May 31, 2001, IT IS this 31st, day of May, 2001 by the United States District Court for the District of Maryland, hereby **ORDERED**:

1. That Defendant's Motion for Summary Judgment [11–1] BE, and the same hereby IS, **DENIED–IN–PART** as to the 1998–1999 school year and **GRANTED–IN–PART** as to the 1999–2000 school year;

2. That, within ten (10) days of the date of entry of this Order, the Plaintiff's attorney is to initiate a telephonic scheduling conference with the Court;

3. That the Clerk of the Court mail copies of this order to all counsel of record.