**E.W. and E.W., on behalf of their minor child, J.W., Plaintiffs,**

**v.**

**The SCHOOL BOARD OF MIAMI–DADE COUNTY FLORIDA, a political subdivision of the State of Florida, Defendant.**

**No. 03–22207–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

March 8, 2004.

Stewart Lee Karlin, Esq., Ft. Lauderdale, FL, for Plaintiffs.

Madelyn P. Schere, Esq., Dade County School Board, Miami, FL, for Defendant.

### ORDER GRANTING IN PART DEFEN-DANT'S MOTION TO DISMISS AMENDED COMPLAINT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Amended Complaint, filed October 22, 2003, and orally argued on January 27, 2004.

### BACKGROUND

J.W. was born profoundly deaf on March 25, 1999. J.W. is also hypotonic with balance and mobility problems that prevent him from walking on his own. He was unsuccessfully fitted with hearing aids when he was two months old. J.W. was evaluated by the University of Miami Ear Institute Cochlear Implant ("UMCI") Team, resulting in a recommendation that he begin auditory-verbal ("AV") therapy.[1] The child has been receiving AV therapy since he was two months old for one hour per week.[2] On April 4, 2000, when he was one year old, J.W. underwent surgery for a Cochlear Implant.[3]

Until J.W. was three years old he received AV therapy, physical and occupational therapy, and a paraprofessional aide from the State of Florida through its Early Intervention Program. At age two and a half, his parents enrolled him in a typical private nursery school.[4] Just before J.W. became three years old, Plaintiffs were contacted by Defendant to develop an Individual Educational Plan ("IEP") for J.W.[5] Two IEP meetings were held, on March 6 and April 17, 2002, respectively. J.W.'s 2002 IEP[6] placed him in a verbotonal ("VT") therapy[7] program for hearing impaired students at Kenwood Elementary School.[8] J.W.'s parents objected to this placement and choose to keep J.W. enrolled in his private preschool. Approximately five months later, on September 24, 2002, J.W.'s parents filed a request for a due process hearing on the 2002 IEP.

The 2002 IEP was to be in effect until April 16, 2003.[9] However, Defendant conducted another IEP meeting on March 21, 2003, four days before the hearing on the 2002 IEP was to start.[10] This meeting produced the 2003 IEP, which placed J.W. at Ludlam Elementary School in general education, with exceptional student edu-

---

1. A detailed description of AV therapy is provided in the Administrative Law Judge's Final Order ("ALJ Final Order") ¶¶ 13–25, attached to Plaintiffs' Amended Complaint as Exhibit A.

2. (ALJ Final Order ¶ 71.)

3. (*Id.* ¶ 23.)

4. J.W. was placed with children ten (10) months younger than him due to his lack of mobility. (Pls.' Am. Compl. ¶ 29.)

5. Under 20 U.S.C. § 1412(a)(3)(A) and 10(A)(ii), Defendant is obligated to engage in "child find" to identify and evaluate all students who may be entitled to special edu-

cation and related services. (ALJ Final Order ¶¶ 29, 83.)

6. The 2002 IEP is dated April 17, 2002. (ALJ Final Order ¶ 39.)

7. A detailed description of VT therapy is provided in the ALJ's Final Order ¶¶ 13–15, 20.

8. A detailed description of the 2002 IEP can be found in the ALJ's Final Order ¶¶ 39–45.

9. (ALJ Final Order ¶ 25.)

10. (*Id.* ¶ 55.)

cation support therapy.[11]

Plaintiffs' due process hearing was conducted by an Administrative Law Judge ("ALJ") at the Florida Division of Administrative Hearings ("DOAH") on March 25–28, 2003. The issues addressed at the hearing were: 1) whether the 2002 IEP provided J.W. with a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"); 2) whether the 2003 IEP provided J.W. with a FAPE in the LRE; 3) if J.W. was not provided with a FAPE in the LRE, whether Plaintiffs were entitled to any relief; and 4) whether the ALJ erred in admitting the 2003 IEP into evidence.[12]

On July 17, 2003, the ALJ issued his Final Order,[13] finding that while the 2002 IEP provided J.W. with a FAPE, it failed to do so in the LRE.[14] However, the ALJ concluded that Plaintiffs were not entitled to any relief for several reasons. First, Plaintiffs were not entitled to relief for the period of April, 2002 to September 24, 2002, because Plaintiffs did not request a due process hearing until September 24, 2002, and thus failed to exhaust their administrative remedies.[15] Second, the ALJ found that Plaintiffs were not entitled to any relief for the period of September 24, 2002 to March 21, 2003, because Plaintiffs failed to comply with the provisions of 20 U.S.C. § 1412(a)(10)(C).[16] Specifically, the ALJ found that because J.W. had never been enrolled in public school,[17] Plaintiffs could not be reimbursed for J.W.'s private school tuition under § 1412(a)(10)(C)(ii).[18] The ALJ next found that the 2003 IEP provided J.W. with a FAPE in the LRE.[19] Finally, the ALJ explained his reasons for allowing the admission of the 2003 IEP into evidence.[20]

On October 10, 2003, Plaintiffs filed their two-count Amended Complaint. Count I seeks review of the ALJ's Final Order pursuant to 20 U.S.C. § 1415(i)(2)(a) of the Individuals with Disabilities Education Act ("IDEA") and an Order compelling Defendant to provide or pay for J.W.'s AV therapy, a paraprofessional aide, mapping, and related expenses. Count II alleges that Defendant discriminated against J.W. based solely on his disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.[21]

In its current Motion, Defendant argues that Plaintiffs' IDEA claim must be dis-

---

11. (*Id.*) The 2003 IEP's proposed placement is for the remainder of the 2002–2003 school year and for the 2003–2004 school year. (*Id.*) A detailed description of the 2003 IEP can be found in the ALJ's Final Order ¶¶ 55–62.

12. Plaintiffs objected to the ALJ's admission of the 2003 IEP into evidence because it was provided to them only one (1) day before the hearing. (*Id.* at 2.; Pls.' Am. Compl. ¶ 4.)

13. *J.D.W. v. Sch. Bd. of Miami–Dade County, Fla.*, Case No. 02-3747E (DOAH July 17, 2003) ("ALJ Final Order").

14. (*Id.* ¶ 93.)

15. (*Id.* ¶ 113.)

16. (*Id.* ¶ 115.)

17. Plaintiffs' Amended Complaint alleges that J.W. was enrolled in public school. (Pls.' Am. Compl. ¶ 38.) However, Plaintiffs admit in their Response that J.W. has never been enrolled in or attended public school, and instead, argue that J.W. "was enrolled in the school district." (Pls.' Resp. at 15.) Therefore, it is undisputed that J.W. has never been enrolled in public school.

18. (ALJ Final Order ¶ 115.)

19. (*Id.* ¶ 117.)

20. (*Id.* at pages 2–3.)

21. (Pls.' Am. Compl. ¶¶ 1 and 2.)

missed for failure to state a claim because J.W. has never been enrolled in public school and thus, Plaintiffs are not entitled to tuition reimbursement under § 1412(a)(10)(C)(ii). In addition, Defendant argues that Plaintiffs' IDEA claim must be dismissed because this Court lacks subject matter jurisdiction to determine what services are to be provided by Defendant to J.W. while he is attending private school. Finally, Defendant argues that Plaintiffs' ADA claim must be dismissed because they have not alleged that Defendant discriminated against J.W. but instead, have merely re-alleged that J.W. was denied a FAPE. In their Response, Plaintiffs argue that 1) they have stated a claim under the IDEA because their Amended Complaint alleges that Defendant failed to provide J.W. with a FAPE; 2) Plaintiffs were instructed by Defendant to utilize the due process procedure and cannot now argue that the Court lacks subject matter jurisdiction; and 3) Plaintiffs' Amended Complaint sufficiently alleges that Defendant discriminated against J.W. In its Reply, Defendant argues that an objection to the Court's subject matter jurisdiction can be made at any time.

## LEGAL STANDARD

■ A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. Fed. R. Civ. Pro. 12(b)(6). "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed.R.Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir.1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir.1986) (citation omitted). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

## DISCUSSION

### I. *Plaintiffs' IDEA Claims*

■ The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE]."[22] 20 U.S.C. § 1400(d)(1)(A). Moreover, the School Board becomes responsible for providing disabled children with a FAPE when they turn three (3) years old. *See* § 1412(a)(1)(A). In order to provide its disabled children with a FAPE, the School Board develops an IEP for the child

**22.** The IDEA defines FAPE as "special education and related services that-
 (A) have been provided at public expense, under public supervision and direction, and without charge;
 (B) meet the standards of the State educational agency;
 (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
 (D) are provided in conformity with the *individualized education program* [IEP] required under section 1414(d) of this title."
 § 1401(8).

through meetings held between the child's parents and various school officials. *See* § 1414(d)(1)(A)-(B); *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 (11th Cir.2003).

■ Under § 1415(f), parents of a disabled child enrolled in private school are entitled to a due process hearing where they may challenge whether the proposed IEP provides their child with a FAPE. Once a final order has been issued pursuant to the due process hearing, § 1415(i)(2) allows the aggrieved party to appeal that decision in any district court regardless of the amount in controversy. On appeal, "the party seeking reversal of the ALJ's determination ... [has] the burden of proving that the [ ] IEP was inappropriate." *Justin G. v. Bd. of Educ. of Montgomery County*, 148 F.Supp.2d 576, 587 (D.Md.2001) (citing *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991)). If the district court finds that the IEP provided the child with a FAPE, judicial review ends. *Loren F.*, 349 F.3d at 1312 (11th Cir.2003).

■ However, if the court concludes that FAPE was not provided, parents may seek reimbursement from the school district for private school tuition under § 1412(a)(10)(C)(ii). *Id.* Specifically, § 1412(a)(10)(C)(ii) states that "if the parents of a child with a disability, who previously received special education and related services[23] under the authority of a public agency, enroll the child in a private elementary or secondary school[24] without the consent of or referral by the public

agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education [FAPE] available to the child in a timely manner prior to that enrollment."

In a case strikingly similar to the case at bar, a Maryland district court found that parents of a disabled student were not barred from seeking reimbursement under § 1412(a)(10)(C)(ii) even though their child had never been enrolled in public school. *Justin G.*, 148 F.Supp.2d at 587. The Court reasoned that "such a construction of the IDEA would produce the absurd result of barring children from receiving a FAPE because their disabilities were detected before they reached school age." *Id.* Moreover, the Court noted that requiring a child to be removed from private school and placed, even temporarily, in a public school that was unable or unwilling to provide the child with a FAPE would "place parents ... in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement." *Id.*

■ However, a child enrolled in private school does not have "an individual right to receive some or all of the special education and related services that the child would receive if enrolled in public school." 34 C.F.R. Pt. 300.454(a). Moreover, due process hearings are not available for complaints about the inadequacy of the proportional funding of services for private school

---

**23.** There is a disputed issue of material fact as to whether J.W. received "special education and related services" within the meaning of § 1412(a)(10)(C)(ii). Therefore, to the extent Defendant's current Motion seeks dismissal of

Plaintiffs' IDEA claim on this ground, Defendant's Motion is denied.

**24.** 34 C.F.R. pt. 300.403(c) added "private preschools."

special education students or the provision of specific services to such students. 34 C.F.R. Pt. 300.457(a); *see also Gary S. v. Manchester Sch. Dist.*, 241 F.Supp.2d 111, 115 (D.N.H.2003). Instead, the determination of what specific services a child enrolled in private school may be entitled to is governed by a State complaint resolution procedure under 34 C.F.R. Pt. 300.457(c); *see also Gary S.*, 241 F.Supp.2d at 115.

 In the instant case, the Court finds that Plaintiffs are entitled to seek review of the ALJ's Final Order in this Court. Here, the ALJ issued a Final Order in favor of Defendant as to whether *both* the 2002 and 2003 IEPs offered J.W. a FAPE in the LRE.[25] Thus, Plaintiffs, as the aggrieved party, have the right to appeal this decision under § 1415(i)(2). Moreover, should this Court find that J.W. was denied a FAPE, Plaintiffs should not be barred from seeking tuition reimbursement under § 1412(a)(10)(C)(ii) for the same reasons as those set forth in *Justin G.* Here, Defendant did not become responsible for providing J.W. with a FAPE until he was already enrolled in a private nursery school. Should Plaintiffs meet their burden of proving that J.W. was denied a FAPE, they should not be prevented from seeking reimbursement under § 1412(C)(ii) merely because they refused to place their child, even for a day, in a public school program found to be inappropriate.

 However, to the extent Plaintiffs' IDEA claim seeks an Order compelling Defendant to provide J.W. with AV thera-py, or to pay for J.W.'s AV therapy, paraprofessional aide, mapping, and related expenses, the Court finds that it lacks subject matter jurisdiction to determine such claims.[26] Here, the ALJ correctly found that under the IDEA, Plaintiffs are only entitled to a due process hearing on "the adequacy of the two IEPs"[27] and thus, did not address what specific services J.W. might be entitled to while he was enrolled in private school. Therefore, Plaintiffs cannot appeal this issue under § 1415(i)(2). Instead, Plaintiffs must avail themselves of the State complaint resolution procedure under 34 C.F.R. Pt. 300.475(c) to determine what specific services J.W. may be entitled to while he is enrolled in private school.

## II. *Plaintiffs' ADA Claim*

 Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1995). Thus, to show a violation of Title II, a plaintiff must show that: 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefit of a public service; and 3) such exclusion was because of plaintiff's disability. *Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach*, 846 F.Supp. 986, 990 (S.D.Fla.1994). However, "to prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required

---

**25.** (ALJ Final Order at page 51 ¶¶ 1, 2.)

**26.** Contrary to Plaintiffs' assertions, under Fed.R.Civ.P. 12(h)(3), an objection to subject matter jurisdiction can be made at any time.

**27.** (ALJ Final Order ¶ 79.)

by IDEA must be shown." *Sellers v. Sch. Bd. of the City of Manassas, Va.,* 141 F.3d 524, 529 (4th Cir.1998) (quoting *Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir. 1982)) (internal quotations omitted).[28] Specifically, a majority of circuits require a showing of bad faith or gross misjudgment in order to show a violation of Title II in the educational context. *See id.*[29] Thus, a showing of discrimination requires something more than allegations of "an incorrect evaluation, or a substantively faulty individualized education plan." *Id.* Furthermore, a court's conclusion that "an incorrect evaluation has been made, and that a different placement [is] required under IDEA, is not necessarily the same thing as holding that a handicapped child has been discriminated against" under the ADA. *Id.* (internal quotations omitted).

▉ In the instant case, the Court finds that Plaintiffs have failed to state a claim under Title II of the ADA. Count II of Plaintiffs' Amended Complaint states that because the IEPs provided J.W. with VT rather than AV therapy, Defendant intentionally discriminated and showed gross misjudgment against J.W.[30] These allegations do not suggest Defendant acted with bad faith or gross misjudgment but instead, merely re-allege that the IEPs are faulty and do not provide J.W. with a FAPE. Therefore, Plaintiffs' ADA claim must be dismissed.

## CONCLUSION

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion to Dismiss Amended Complaint be, and the same is hereby, GRANTED IN PART. Count I of Plaintiffs' Amended Complaint is DISMISSED to the extent it seeks provision of or reimbursement for J.W.'s AV therapy, a paraprofessional aide, mapping, and related expenses, which must be resolved pursuant to the State complaint resolution procedure under 34 C.F.R. Pt. 300.475(c). Count I of Plaintiffs' Amended Complaint remains PENDING to the extent it seeks review of the ALJ's Final Order pursuant to 20 U.S.C. § 1415(i)(2) and tuition reimbursement under 20 U.S.C. § 1412(a)(10)(C)(ii). Count II of Plaintiffs' Amended Complaint is DISMISSED without prejudice to amend within twenty (20) days if Plaintiffs can, in good faith, allege that Defendant acted with bad faith or gross misjudgment.

**28.** *Sellers* discusses the Rehabilitation Act, which is identical to the ADA. *See Fedorov v. Bd. of Regents for the Univ. of Ga.,* 194 F.Supp.2d 1378, 1387 (S.D.Ga.2002) (citing *Waddell v. Valley Forge Dental Assoc.,* 276 F.3d 1275, 1279 n. 3 (11th Cir.2001)) (noting that because the Rehabilitation Act and the ADA are identical, "interpretations of one Act apply to the other").

**29.** *See also Hoekstra v. Indep. Sch. Dist. No. 283,* 103 F.3d 624, 626–27 (8th Cir.1996); *Wenger v. Canastota Cent. Sch. Dist.,* 979 F.Supp. 147, 152 (N.D.N.Y.1997), *aff'd,* 208 F.3d 204 (2nd Cir.2000); *Sch. Dist. of Wis. Dells v. Z.S.,* 184 F.Supp.2d 860, 884 (W.D.Wis.2001), *aff'd,* 295 F.3d 671 (7th Cir. 2002).

**30.** (Pls.' Am. Compl. ¶ 59.)